UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| J.K. SCANLAN COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> P. SALA & SONS CONSTRUCTION, INC.; and JOSEPH SALA, <br><br> Defendants. | CIVIL CASE NO.: <br> 7:11-cv-05563-VB <br><br><br><br><br><br> SEPTEMBER 1, 2011 |

## AMENDED VERIFIED COMPLAINT

Plaintiff, J.K. Scanlan Company, Inc., hereby submits this Amended Verified Complaint against the Defendants, and represents:

### PARTIES

1.     Plaintiff, J.K. Scanlan Company, Inc. ("J.K. Scanlan"), is a Massachusetts corporation with a principal place of business at 15 Research Road, East Falmouth, Massachusetts.

2.     Defendant, P. Sala & Sons Construction, Inc. ("P. Sala"), is a New York corporation with a principal place of business at 2775 Route 55, Poughquag, New York.

3.     Defendant, Joseph Sala, is an individual having an address at 51 Noble Hill, Poughquag, New York.

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. § 1332, the Court has subject matter jurisdiction over this civil action because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and because there is complete diversity of citizenship between the parties.

5.      Pursuant to 28 U.S.C. § 1391(a), venue is proper in this District because the Defendants all reside in the State of New York and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS

### The Orchard Project

6.      J.K. Scanlan, as general contractor, and Orchard Hills of Newburgh, LLC, as owner, entered into an agreement for the construction of a multi-family apartment project located in Newburgh, New York known as Orchard Hills of Newburgh ("Orchard Project").

7.      On July 20, 2010, J.K. Scanlan, as general contractor, and P. Sala, as subcontractor, entered into a subcontract agreement ("Orchard Subcontract") in the amount of $7,400,000.00 where P. Sala agreed to perform the site work, concrete formwork and flatwork and other general items for the Orchard Project in accordance with the terms and conditions set forth therein.

8.      Additionally, J.K. Scanlan, as general contractor, and P. Sala, as subcontractor, entered into an agreement ("Off Site Agreement") whereby P. Sala agreed to perform certain off site work for the benefit of the Orchard Project in accordance with the terms and conditions set forth therein.

9.      J.K. Scanlan undertook its duties and obligations under the Orchard Subcontract and Off Site Agreement in strict and full accordance with the terms and conditions set forth therein.

10.     During the construction of the Orchard Project and as required by the terms of the Orchard Subcontract and Off Site Agreement, P. Sala submitted the Payment Applications to J.K. Scanlan requesting payment for work performed and materials supplied by P. Sala's employees, subcontractors and suppliers through the period end dates set forth on the payment applications through June 6, 2011.

11.     In exchange for each payment request, and as a material inducement for J.K. Scanlan paying P. Sala the amount requested in each payment application, P. Sala executed a Release and Acknowledgement of Payment in its favor.  Each Release and Acknowledgement of Payment that P. Sala executed contained the following representation:

> The undersigned warrants and represents that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with said Project have been paid and satisfied, and further agrees to indemnify and hold harmless each and every Releasee from any and all liens, financial obligations or claims, including costs and reasonable attorney's fees, arising under or in connection with work performed or provided for, to or on behalf of the undersigned in connection with said Project as a condition precedent to the making of payments identified here.

12.     Joseph Sala, president of P. Sala, executed each Release and Acknowledgement of Payment on behalf of P. Sala in exchange for payments by J.K. Scanlan and represented that all bills, claims and obligations for material, services, equipment, labor and any other items

furnished under or in connection with the Orchard Project had been paid and satisfied through the period end date set forth on each Release and Acknowledgement of Payment, as follows:

a.  In exchange for payment of $471,664.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Off Site Agreement to the Orchard Project had been paid and satisfied through June 25, 2010;

b.  In exchange for payment of $1,250,010.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through June 30, 2010;

c.  In exchange for payment of $38,250.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Off Site Agreement to the Orchard Project had been paid and satisfied through July 1, 2010;

d.  In exchange for payment of $1,045,220.40 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through August 1, 2010;

e.  In exchange for payment of $300,000.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through August 31, 2010;

f.  In exchange for payment of $379,704.90 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through August 31, 2010;

g.  In exchange for payment of $115,613.10 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Off Site Agreement to the Orchard Project had been paid and satisfied through August 31, 2010.

h.  In exchange for payment of $720,315.90 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and

any other items furnished under or in connection with the Orchard Project had been paid and satisfied through October 1, 2010;

i.  In exchange for payment of $162,283.64 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through November 1, 2010;

j.  In exchange for payment of $90,000.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through December 13, 2010;

k.  In exchange for payment of $50,000.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through December 21, 2010;

l.  In exchange for payment of $80,000.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through January 4, 2011;

m.  In exchange for payment of $50,000.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through January 18, 2011;

n.  In exchange for payment of $33,000.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through January 24, 2011;

o.  In exchange for payment of $50,020.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through March 17, 2011;

p.  In exchange for payment of $30,000.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any

other items furnished under or in connection with the Orchard Project had been paid and satisfied through March 18, 2011;

q.      In exchange for payment of $40,000.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through March 18, 2011;

r.      In exchange for payment of $75,000.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through April 4, 2011;

s.      In exchange for payment of $40,020.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through April 11, 2011;

t.      In exchange for payment of $39,000.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through April 18, 2011;

u.      In exchange for payment of $38,317.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through April 25, 2011;

v.      In exchange for payment of $53,908.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through May 2, 2011;

w.      In exchange for payment of $60,020.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through May 9, 2011;

x.      In exchange for payment of $57,377.50 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any

other items furnished under or in connection with the Orchard Project had been paid and satisfied through May 16, 2011;

y.   In exchange for payment of $62,273.05 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through May 23, 2011;

z.   In exchange for payment of $49,977.36 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through May 27, 2011; and

aa.  In exchange for payment of $67,480.73 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Orchard Project had been paid and satisfied through June 6, 2011.

13.   In reliance on the truth and accuracy of representations made by Joseph Sala in each Release and Acknowledgement of Payment that P. Sala had paid its employees, subcontractors and suppliers in full through June 6, 2011, J.K. Scanlan paid P. Sala for work performed and materials supplied to the Orchard Project.

14.   Despite paying P. Sala for work that its employees, subcontractors and suppliers performed on the Orchard Project through June 6, 2011, J.K. Scanlan received numerous claims from P. Sala's subcontractors and suppliers contending that P. Sala had failed to pay its subcontractors and suppliers in full for work performed and materials supplied on the Orchard Project prior to June 6, 2011.

15.   The unpaid P. Sala subcontractors and suppliers recorded or threatened to record mechanics' liens on the Orchard Project for the amounts that they claimed were outstanding through June 6, 2011.

16.     J.K. Scanlan investigated the claims of the P. Sala subcontractors and suppliers and determined that they had not been paid in full by P. Sala through June 6, 2011 despite the fact that J.K. Scanlan had paid P. Sala in full for work performed and materials supplied by these subcontractors and suppliers through June 6, 2011 based on representations by Joseph Sala that P. Sala had paid these subcontractors and suppliers in full through June 6, 2011.

17.     J.K. Scanlan paid or has committed to pay the unpaid P. Sala subcontractors and suppliers the outstanding amounts due for work performed and materials supplied through June 6, 2011 for which it had already paid P. Sala to avoid costs and potential litigation arising out of defending payment bond claims asserted by these subcontractors and suppliers.

18.     In addition, J.K. Scanlan received notice from the United States Department of Labor that P. Sala failed to pay its employees in full for work performed on the Orchard Project through June 6, 2011. The United States Department of Labor is currently investigating the unpaid wage claim thereby exposing J.K. Scanlan to potential liability.

19.     Prior to fully performing all of its work under the Orchard Subcontract, P. Sala abandoned the Orchard Subcontract and "walked-off" the Orchard Project. J.K. Scanlan demanded that P. Sala return to the Orchard Project to complete its duties and obligations under the Orchard Subcontract. P. Sala refused to return to the Orchard Project and complete performance of the Orchard Subcontract.

20.     On July 8, 2011, J.K. Scanlan issued a notice to cure to P. Sala demanding that P. Sala return to the Orchard Project and cure its numerous defaults and material breaches of contract. P. Sala refused to return to the Orchard Project.

21.     On July 12, 2011, J.K. Scanlan properly terminated the Orchard Subcontract.

22.     J.K. Scanlan has hired and will hire replacement subcontractors to complete the work under the Orchard Subcontract that P. Sala was required to perform.

23.     J.K. Scanlan has also hired and will hire replacement contractors to remediate the defective work that P. Sala performed on the Orchard Project contrary to the terms of the Orchard Subcontract.

24.     As a result of P. Sala's abandonment of the Orchard Project and failure to pay its subcontractors and suppliers, the Orchard Project has been delayed.

### The Vineyard Project

25.     J.K. Scanlan, as general contractor, and Vineyard Commons Holdings, LLC, as owner, entered into an agreement for the construction of a multi-family apartment project located in Hopewell Junction, New York known as Vineyard Commons ("Vineyard Project").

26.     On April 14, 2009, J.K. Scanlan, as general contractor, and P. Sala, as subcontractor, entered into a subcontract agreement ("Vineyard Subcontract") in the amount of $6,642,088.00 where P. Sala agreed to perform the site work, concrete, masonry and landscaping for the Vineyard Project in accordance with the terms and conditions set forth in the Vineyard Subcontract.

27.     J.K. Scanlan undertook its duties and obligations under the Vineyard Subcontract in strict and full accordance with the terms and conditions set forth therein.

28.     During the construction of the Vineyard Project and as required by the terms of the Vineyard Subcontract, P. Sala submitted the Payment Applications to J.K. Scanlan

requesting payment for work performed and materials supplied by P. Sala's employees,

subcontractors and suppliers through the period end dates set forth on the payment applications.

29.     In exchange for each payment request, and as a material inducement for J.K.

Scanlan paying P. Sala the amount requested in each payment application, P. Sala executed a

Release and Acknowledgement of Payment in its favor.  Each Release and Acknowledgement

of Payment that P. Sala executed contained the following representation:

> The undersigned warrants and represents that all bills, claims and
> obligations for material, services, equipment, labor and any other items
> furnished under or in connection with said Project have been paid and
> satisfied, and further agrees to indemnify and hold harmless each and
> every Releasee from any and all liens, financial obligations or claims,
> including costs and reasonable attorney's fees, arising under or in
> connection with work performed or provided for, to or on behalf of the
> undersigned in connection with said Project as a condition precedent to
> the making of payments identified here.

30.     Joseph Sala, president of P. Sala, executed each Release and Acknowledgement

of Payment on behalf of P. Sala in exchange for payments by J.K. Scanlan and represented that

all bills, claims and obligations for material, services, equipment, labor and any other items

furnished under or in connection with the Vineyard Project had been paid and satisfied through

the period end date set forth on each Release and Acknowledgement of Payment, as follows:

a.      In exchange for payment of $531,833.40 by J.K. Scanlan, P. Sala represented
that all bills, claims and obligations for material, services, equipment, labor and
any other items furnished under or in connection with the Vineyard Project had
been paid and satisfied through July 15, 2009;

b.      In exchange for payment of $605,095.20 by J.K. Scanlan, P. Sala represented
that all bills, claims and obligations for material, services, equipment, labor and
any other items furnished under or in connection with the Vineyard Project had
been paid and satisfied through August 19, 2009;

c.      In exchange for payment of $771,896.70 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Vineyard Project had been paid and satisfied through August 31, 2009;

d.      In exchange for payment of $900,052.20 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Vineyard Project had been paid and satisfied through October 21, 2009;

e.      In exchange for payment of $566,076.60 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Vineyard Project had been paid and satisfied through November 18, 2009;

f.      In exchange for payment of $341,954.10 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Vineyard Project had been paid and satisfied through December 16, 2009;

g.      In exchange for payment of $297,000.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Vineyard Project had been paid and satisfied through January 20, 2010;

h.      In exchange for payment of $241,740.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Vineyard Project had been paid and satisfied through February 17, 2010;

i.      In exchange for payment of $287,134.20 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Vineyard Project had been paid and satisfied through March 17, 2010;

j.      In exchange for payment of $518,277.60 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Vineyard Project had been paid and satisfied through April 21, 2010;

k.      In exchange for payment of $21,901.50 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Vineyard Project had been paid and satisfied through May 20, 2010;

l.      In exchange for payment of $403,880.40 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Vineyard Project had been paid and satisfied through May 19, 2010;

m.      In exchange for payment of $276,444.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Vineyard Project had been paid and satisfied through June 16, 2010;

n.      In exchange for payment of $301,386.60 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Vineyard Project had been paid and satisfied through July 21, 2010; and

o.      In exchange for payment of $140,000.00 by J.K. Scanlan, P. Sala represented that all bills, claims and obligations for material, services, equipment, labor and any other items furnished under or in connection with the Vineyard Project had been paid and satisfied through August 18, 2010.

31.      In reliance on the truth and accuracy of representations made by Joseph Sala in each Release and Acknowledgement of Payment that P. Sala had paid its employees, subcontractors and suppliers in full through August 18, 2010, J.K. Scanlan paid P. Sala for work performed and materials supplied to the Vineyard Project through August 18, 2010.

32.      Despite paying P. Sala for work that its employees, subcontractors and suppliers performed on the Vineyard Project through August 18, 2010, J.K. Scanlan received numerous claims from P. Sala's subcontractors and suppliers contending that P. Sala had failed to pay its

subcontractors and suppliers in full for work performed and materials supplied on the Vineyard Project prior to August 18, 2010.

33.     The unpaid P. Sala subcontractors and suppliers recorded or threatened to record mechanics' liens on the Orchard Project for the amounts that they claimed were outstanding through August 18, 2010.

34.     J.K. Scanlan investigated the claims of the P. Sala subcontractors and suppliers and determined that they had not been paid in full by P. Sala through August 18, 2010 despite the fact that J.K. Scanlan had paid P. Sala in full for work performed and materials supplied by these subcontractors and suppliers through August 18, 2010 based on representations by Joseph Sala that P. Sala had paid these subcontractors and suppliers in full through August 18, 2010.

35.     J.K. Scanlan paid, has committed to pay or may be exposed to liability to the unpaid P. Sala subcontractors and suppliers for the outstanding amounts due for work performed and materials supplied through August 18, 2010 for which it had already paid P. Sala to avoid costs and potential litigation arising out of defending payment bond claims asserted by these subcontractors and suppliers.

## COUNT I

### (Breach of Contract against P. Sala on the Orchard Subcontract)

1-35.     J. K. Scanlan restates and reasserts as if fully set forth here the allegations set forth in paragraphs 1 through 35 above.

36.     The Orchard Subcontract is a binding contract between J.K. Scanlan and P. Sala. The parties duly entered into the Orchard Subcontract, were authorized to enter into the

Orchard Subcontract and performed all the conditions precedent necessary for execution of the Orchard Subcontract. J.K. Scanlan has performed its obligations under the Orchard Subcontract in full and strict compliance with the terms and conditions thereof.

37.     Notwithstanding J.K. Scanlan's performance, P. Sala has failed and refused to perform its obligations under the Orchard Subcontract in material breach of contract.

38.     P. Sala has materially breached the Orchard Subcontract as follows:

a.      P. Sala unjustifiably abandoned the Orchard Project;

b.      P. Sala refused to cure its numerous defaults and material breaches of contract on the Orchard Project;

c.      P. Sala has failed and refused to perform and complete its work on the Project in accordance with the terms and conditions of the Orchard Subcontract;

d.      P. Sala has failed to prosecute its work in a timely manner;

e.      P. Sala has failed to comply with the Orchard Project schedule;

f.      P. Sala has failed to provide adequate manpower to the Orchard Project;

g.      P. Sala has failed to pay its employees, subcontractors and suppliers on the Orchard Project despite executing Release and Acknowledgement of Payments warranting and representing that those subcontractors and suppliers had been paid in order to induce J. K. Scanlan to make payment to P. Sala;

h.   P. Sala has failed to pay wages and benefits to employees in violation of labor laws;

i.   P. Sala has delayed the completion of the Orchard Project; and

j.   P. Sala has filed a willfully exaggerated and invalid lien on the Orchard Project.

39.   As a direct result of P. Sala's material breach of the Orchard Subcontract, J.K. Scanlan has been, and will continue to be, severely damaged for which P. Sala is liable.

## COUNT II

### (Breach of Contract against P. Sala on the Off Site Agreement)

1-39.   J. K. Scanlan restates and reasserts as if fully set forth here the allegations set forth in paragraphs 1 through 39 above.

40.   The Off Site Agreement is a binding contract between J.K. Scanlan and P. Sala. The parties duly entered into the Off Site Agreement, were authorized to enter into the Off Site Agreement and performed all the conditions precedent necessary for execution of the Off Site Agreement. J.K. Scanlan has performed its obligations under the Off Site Agreement in full and strict compliance with the terms and conditions thereof.

41.   Notwithstanding J.K. Scanlan's performance, P. Sala has failed and refused to perform its obligations under the Off Site Agreement in material breach of contract.

42.   P. Sala has materially breached the Off Site Agreement by failing to pay its subcontractors and suppliers on the Orchard Project despite executing Release and

Acknowledgement of Payments warranting and representing that those subcontractors and suppliers had been paid in order to induce J. K. Scanlan to make payment to P. Sala.

43.    As a direct result of P. Sala's material breach of the Off Site Agreement, J.K. Scanlan has been, and will continue to be, severely damaged for which P. Sala is liable.

## COUNT III

### (Breach of Contract against P. Sala on the Vineyard Subcontract)

1-43.   J. K. Scanlan restates and reasserts as if fully set forth here the allegations set forth in paragraphs 1 through 43 above.

44.    The Vineyard Subcontract is a binding contract between J.K. Scanlan and P. Sala.  The parties duly entered into the Vineyard Subcontract, were authorized to enter into the Vineyard Subcontract and performed all the conditions precedent necessary for execution of the Vineyard Subcontract.  J.K. Scanlan has performed its obligations under the Vineyard Subcontract in full and strict compliance with the terms and conditions thereof.

45.    Notwithstanding J.K. Scanlan's performance, P. Sala has failed and refused to perform its obligations under the Vineyard Subcontract in material breach of contract.

46.    P. Sala has materially breached the Vineyard Subcontract by failing to pay its subcontractors and suppliers on the Vineyard Project despite executing Release and Acknowledgement of Payments warranting and representing that those subcontractors and suppliers had been paid in order to induce J. K. Scanlan to make payment to P. Sala.

47.    As a direct result of P. Sala's material breach of the Vineyard Subcontract, J.K. Scanlan has been, and will continue to be, severely damaged for which P. Sala is liable.

## COUNT IV

### (Breach of the Covenant of Good Faith and Fair Dealing against P. Sala)

1-47.   J. K. Scanlan restates and reasserts as if fully set forth here the allegations set forth in paragraphs 1 through 47 above.

48.   The Orchard Subcontract, the Off Site Agreement and the Vineyard Subcontract included implied covenants of good faith and fair dealing.

49.   P. Sala breached the implied covenants of good faith and fair dealing by, *inter alia*, materially breaching the Orchard Subcontract, the Off Site Agreement and the Vineyard Subcontract in bad faith; executing and submitting Release and Acknowledgement of Payments to J.K. Scanlan warranting and representing that its employees, subcontractors and suppliers had been paid in full, when in fact they had not been, in order to fraudulently induce J. K. Scanlan to make payments to P. Sala; and filing a willfully exaggerated and invalid lien on the Orchard Project.

50.   P. Sala's breach of the covenant of good faith and fair dealing directly and proximately caused J.K. Scanlan to suffer damages.

## COUNT V

### (Fraudulent Misrepresentation against P. Sala)

1-50.   J. K. Scanlan restates and reasserts as if fully set forth here the allegations set forth in paragraphs 1 through 50 above.

51.   P. Sala falsely and fraudulently represented to J.K. Scanlan by executing and submitting the Release and Acknowledgement of Payments that it had paid its employees,

subcontractors and suppliers on the Orchard Project in full through June 6, 2011 and that it had

paid its subcontractors and suppliers on the Vineyard Project in full through August 18, 2010.

52.     P. Sala made that false and fraudulent misrepresentation as a statement of fact to

J.K. Scanlan with the intention of defrauding J.K. Scanlan by inducing J.K. Scanlan to make

payments to it.

53.     That false and fraudulent representation was untrue and known to be untrue by

P. Sala because P. Sala knew at the time it executed the lien waivers and thereafter that P. Sala

had not paid all of its employees, subcontractors and suppliers on the Orchard Project in full

through June 6, 2011 and that it had not paid its subcontractors and suppliers on the Vineyard

Project in full through August 18, 2010.

54.     That false and fraudulent representation was made by P. Sala with the intent to

deceive and induce J.K. Scanlan to pay P. Sala's Payment Applications.

55.     P. Sala did in fact deceive and induce J.K. Scanlan to pay P. Sala's Payment

Applications.

56.     J.K. Scanlan paid P. Sala's Payment Applications in reasonable reliance on P.

Sala's representation that it had paid its employees, subcontractors and suppliers on the

Orchard Project in full through June 6, 2011 and that it had paid its subcontractors and

suppliers on the Vineyard Project in full through August 18, 2010.

57.     Instead of paying its subcontractors and suppliers in full as P. Sala had

represented, P. Sala kept for itself a portion of the funds that J.K. Scanlan had paid to it.

58.     As a result of P. Sala's false and fraudulent representations, J.K. Scanlan paid additional funds to P. Sala's employees, subcontractors and suppliers for work and material for which it had already paid and, therefore, was damaged.

59.     P. Sala received a benefit by keeping for itself a portion of the funds that J.K. Scanlan had paid to it instead of paying P. Sala's employees, subcontractors and suppliers in full.

60.     P. Sala is liable to J.K. Scanlan for damages as a result of the aforedescribed conduct.

## COUNT VI

### (Negligent Misrepresentation against P. Sala)

1-60.     J. K. Scanlan restates and reasserts as if fully set forth here the allegations set forth in paragraphs 1 through 60 above.

61.     P. Sala falsely and fraudulently represented to J.K. Scanlan by executing and submitting the Release and Acknowledgement of Payments that P. Sala had paid its employees, subcontractors and suppliers on the Orchard Project in full through June 6, 2011 and that it had paid its subcontractors and suppliers on the Vineyard Project in full through August 18, 2010.

62.     P. Sala made that false and negligent misrepresentation as a statement of fact to J.K. Scanlan.

63.     P. Sala, as subcontractor, had an obligation and duty to impart correct information to J.K. Scanlan, as general contract, in accordance with the terms of the Orchard Subcontract and the Vineyard Subcontract.

50341266 v4

64.     P. Sala knew, had the means of knowing, ought to have known or had the duty of knowing that the representation was untrue because it knew, had the means of knowing, ought to have known or had the duty of knowing that it had not paid its employees, subcontractors and suppliers on the Orchard Project in full through June 6, 2011 and that it had not paid its subcontractors and suppliers on the Vineyard Project in full through August 18, 2010.

65.     The false and negligent misrepresentation was made by P. Sala to induce J.K. Scanlan to pay its Payment Applications.

66.     P. Sala did in fact induce J.K. Scanlan to pay P. Sala's Payment Applications.

67.     J.K. Scanlan paid P. Sala's Payment Applications in reasonable reliance on P. Sala's misrepresentation that P. Sala had paid its employees, subcontractors and suppliers on the Orchard Project in full through June 6, 2011 and that it had paid its subcontractors and suppliers on the Vineyard Project in full through August 18, 2010.

68.     Instead of paying its subcontractors and suppliers in full as P. Sala had represented, P. Sala kept for itself a portion of the funds that J.K. Scanlan had paid to it at the express direction and under the control of Joseph Sala.

69.     As a result of P. Sala's false and negligent misrepresentations, J.K. Scanlan paid additional funds to P. Sala's employees, subcontractors and suppliers for work and material for which it had already paid and, therefore, was damaged.

70.     P. Sala received a benefit by keeping for itself a portion of the funds that J.K. Scanlan had paid to it instead of paying P. Sala's employees, subcontractors and suppliers in full.

71.     P. Sala is liable to J.K. Scanlan for damages as a result of the aforedescribed conduct.

## COUNT VII

### (Violation of Article 3A of the New York Lien Law against P. Sala)

1-71.   J. K. Scanlan restates and reasserts as if fully set forth here the allegations set forth in paragraphs 1 through 71 above.

72.     The funds that P. Sala received from J.K. Scanlan constitute trust funds under Article 3A of the New York Lien Law.

73.     P. Sala was required to hold said funds in trust for the benefit of its employees, subcontractors and suppliers performing work on the Orchard Project and the Vineyard Project.

74.     P. Sala failed to pay its employees, subcontractors and suppliers in full for the work that they performed on the Orchard Project and the Vineyard Project despite receiving funds from J.K. Scanlan for the work that those subcontractors and suppliers performed.

75.     Upon information and belief, P. Sala paid, transferred or applied those trust funds for purposes other than for a purpose as set forth in Article 3A of the New York Lien Law.

76.     Upon information and belief, P. Sala kept for itself the trust funds that P. Sala received from J.K. Scanlan instead of paying its employees, subcontractors and suppliers in violation of Article 3A of the New York Lien Law.

77.     P. Sala violated Article 3A of the New York Lien Law.

## COUNT VIII

### (Fraudulent Misrepresentation against Joseph Sala)

1-77.   J. K. Scanlan restates and reasserts as if fully set forth here the allegations set forth in paragraphs 1 through 77 above.

78.     Joseph Sala falsely and fraudulently represented to J.K. Scanlan that P. Sala had paid its employees, subcontractors and suppliers on the Orchard Project in full through June 6, 2011 and that it had paid its subcontractors and suppliers on the Vineyard Project in full through August 18, 2010.

79.     Joseph Sala made that false and fraudulent misrepresentation as a statement of fact to J.K. Scanlan.

80.     That false and fraudulent representation was untrue and known to be untrue by Joseph Sala because Joseph Sala knew at the time he executed the lien waivers and thereafter that P. Sala had not paid its employees, subcontractors and suppliers on the Orchard Project in full through June 6, 2011 and that it had not paid its subcontractors and suppliers on the Vineyard Project in full through August 18, 2010.

81.     That false and fraudulent representation was made by Joseph Sala with the intent to deceive and induce J.K. Scanlan to pay P. Sala's Payment Applications.

82.     Joseph Sala did in fact deceive and induce J.K. Scanlan to pay P. Sala's Payment Application.

83.     J.K. paid P. Sala's Payment Application in reliance on Joseph Sala's representation that P. Sala had paid its employees, subcontractors and suppliers on the Orchard Project in full through June 6, 2011 and that it had paid its subcontractors and suppliers on the Vineyard Project in full through August 18, 2010.

84.     As a result of Joseph Sala's false and fraudulent representations, J.K. Scanlan paid additional funds to P. Sala's subcontractors and suppliers for work and material for which it had already paid and, therefore, was damaged.

85.     Instead of paying its employees, subcontractors and suppliers in full as Joseph Sala had represented, Joseph Sala kept for itself a portion of the funds that J.K. Scanlan had paid to it at the express direction and under the control of Joseph Sala.

86.     Joseph Sala, as president of P. Sala, received a benefit by Joseph Sala keeping for itself a portion of the funds that J.K. Scanlan had paid to it instead of paying P. Sala's employees, subcontractors and suppliers in full.

87.     Joseph Sala is liable to J.K. Scanlan for damages as a result of the aforedescribed conduct.

## COUNT IX

### (Negligent Misrepresentation against Joseph Sala)

1-87.   J. K. Scanlan restates and reasserts as if fully set forth here the allegations set forth in paragraphs 1 through 87 above.

88.     Joseph Sala falsely and negligently represented to J.K. Scanlan that P. Sala had paid its employees, subcontractors and suppliers on the Orchard Project in full through June 6, 2011 and that it had paid its subcontractors and suppliers on the Vineyard Project in full through August 18, 2010.

89.     Joseph Sala made that false and negligent misrepresentation as a statement of fact to J.K. Scanlan.

90.     Joseph Sala knew, had the means of knowing, ought to have known or had the duty of knowing that the representation was untrue because Joseph Sala knew, had the means of knowing, ought to have known or had the duty of knowing that P. Sala had not paid its employees, subcontractors and suppliers on the Orchard Project in full through June 6, 2011 and that it had not paid its subcontractors and suppliers on the Vineyard Project in full through August 18, 2010.

91.     The false and negligent misrepresentation was made by Joseph Sala to induce J.K. Scanlan to pay P. Sala's Payment Applications.

92.     Joseph Sala did in fact induce J.K. Scanlan to pay P. Sala's Payment Applications.

93.     J.K. Scanlan paid P. Sala's Payment Applications in reliance on Joseph Sala's misrepresentation that P. Sala had paid its employees, subcontractors and suppliers on the Orchard Project in full through June 6, 2011 and that it had paid its subcontractors and suppliers on the Vineyard Project in full through August 18, 2010.

94.    As a result of Joseph Sala's false and negligent misrepresentations, J.K. Scanlan paid additional funds to P. Sala subcontractors and suppliers for work and material for which it had already paid and, therefore, was damaged.

95.    Instead of paying its employees, subcontractors and suppliers in full as Joseph Sala had represented, Joseph Sala kept for itself a portion of the funds that J.K. Scanlan had paid to it at the express direction and under the control of Joseph Sala.

96.    Joseph Sala, as president of P. Sala, received a benefit by P. Sala and/or Joseph Sala keeping for itself a portion of the funds that J.K. Scanlan had paid to it instead of paying P. Sala's employees, subcontractors and suppliers in full.

97.    Joseph Sala is liable to J.K. Scanlan for damages as a result of the aforedescribed conduct.

## COUNT X

**(Violation of Article 3A of the New York Lien Law against Joseph Sala)**

1-97.    J. K. Scanlan restates and reasserts as if fully set forth here the allegations set forth in paragraphs 1 through 97 above.

98.    The funds that P. Sala received from J.K. Scanlan constitute trust funds under Article 3A of the New York Lien Law.

99.    P. Sala was required to hold said funds in trust for the benefit of its employees, subcontractors and suppliers performing work on the Orchard Project and the Vineyard Project.

100.    P. Sala failed to pay its employees, subcontractors and suppliers in full for the work that they performed on the Orchard Project and the Vineyard Project despite receiving

funds from J.K. Scanlan for the work that those employees, subcontractors and suppliers performed.

101.   Upon information and belief, Joseph Sala, as president of P. Sala, had exclusive control of the finances of P. Sala and controlled and directed the manner in which the funds P. Sala received from J.K. Scanlan were paid and to whom those funds were paid.

102.   Upon information and belief, P. Sala paid, transferred or applied those trust funds for purposes other than for a purpose as set forth in Article 3A of the New York Lien Law at the express direction of Joseph Sala.

103.   Upon information and belief, Joseph Sala kept for itself the trust funds that P. Sala received from J.K. Scanlan instead of paying its employees, subcontractors and suppliers in violation of Article 3A of the New York Lien Law at the express direction of Joseph Sala.

104.   Joseph Sala, as president of P. Sala, violated Article 3A of the New York Lien Law.

## COUNT XI

### (Declaratory Judgment)

1-104.   J. K. Scanlan restates and reasserts as if fully set forth here the allegations set forth in paragraphs 1 through 104 above.

105.   In exchange for each payment received from J.K. Scanlan, P. Sala executed a Release and Acknowledgement of Payment which contained the following:

> ... the undersigned subcontractor or supplier, for itself, its successors and assigns, hereby remises, releases and forever discharges [J.K. Scanlan], the Owner and their respective sureties, guarantors,

successors and assigns (hereinafter "Releasees") of and from any and all manner of liens, debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements and any and all claims and liabilities whatsoever, in law and in equity, arising under or by virtue of the above dated contract with [J.K. Scanlan], including any and all deletions, additions and modifications thereto, oral and written, or in connection with the above referenced Project ("Project").

The Undersigned hereby acknowledges said sum to constitute, along with the prior payments and retainage referenced above, full compensation for all work performed under or in connection with said Project through the date set forth above, including all work performed under original or supplemental contracts, including any amendments or modifications thereto, oral or written, and accepts said as full payment for all work performed through the date set forth above, and does therefore waive, relinquish and release any and all liens and claims for compensation of any nature which the undersigned has or may have against any of the Releasees or against the property on which the work was performed. …

106.    By executing the Releases and Acknowledgements of Payment in exchange for payments, P. Sala released all claims, liens and other liabilities against J.K. Scanlan through June 6, 2011.

107.    P. Sala did not perform any additional work on the Orchard Project after June 6, 2011.

108.    Notwithstanding that it had released all claims, liens and other liabilities against J.K. Scanlan through June 6, 2011, P. Sala recorded a mechanics' lien ("Lien") on the Orchard Project in the amount of $1,563,736.64 on August 1, 2011 for work performed prior to June 6, 2011.

109.    On August 10, 2011, J.K. Scanlan, as principal, and Arch Insurance Company, as surety, filed with the Orange County Clerk's Office a Bond Discharging Mechanic's Lien, Bond No. SU1040315, ("Bond") in the amount of $1,720,110.30.

110.    On August 16, 2011, J.K. Scanlan served P. Sala with a date-stamped copy of the Bond.

111.    The Lien and the amounts claimed thereunder are invalid because P. Sala released all claims, liens and other liabilities against J.K. Scanlan through June 6, 2011. In addition, the substantial damages that J.K. Scanlan has suffered as a direct result of P. Sala's materially breaches of the Orchard Subcontract, abandonment of the Orchard Project, fraud, misrepresentation and trust fund violations far exceed the amount claimed in the Lien.

112.    Therefore, the amount claimed in the Lien is willfully exaggerated and the Lien is void as a matter of law pursuant to New York Lien Law § 39.

113.    Accordingly, the Bond is discharged as a matter of law.

114.    There exists a bona fide, actual and substantial uncertainty as to the validity of the Lien and enforceability of the Bond which require settlement by this Court.

115.    The rights of the parties hereto under the Lien and the Bond can only be determined by a declaratory judgment.

116.    All persons having an interest in the subject matter of this Amended Complaint for declaratory judgment are parties to this action or have reasonable notice thereof.

WHEREFORE, Plaintiff, J.K. Scanlan Company, Inc., respectfully requests an order of this Court against Defendants, P. Sala & Sons Construction, Inc. and Joseph Sala, as follows:

1.      Awarding monetary damages on all Counts;

2.      Awarding interest and costs on all Counts;

3.      Awarding attorneys' fees on Counts IV-XI;

4.      Compelling a final accounting on Count VII and Count X;

5.      Enforcing the trust on Count VII and Count X;

6.      Determining the existence and amount of any trust asset or of any trust claim on Count VII and Count X;

7.      Terminating or limiting the authority of P. Sala and Joseph Sala in the application of trust assets or of any trust asset, or directing the time and manner of application of a trust asset or part thereof on Count VII and Count X;

8.      Requiring P. Sala and Joseph Sala to provide security to ensure the proper distribution of the trust assets on Count VII and Count X;

9.      Distributing any trust assets available for distribution to J.K. Scanlan on Count VII and Count X;

10.      Discharging P. Sala and Joseph Sala as trustees on Count VII and Count X;

11.      Declaring that P. Sala released the claims set forth in the Lien on Count XI;

12.      Declaring that the amount claimed in the Lien is willfully exaggerated on Count XI;

13.      Declaring the Lien void as a matter of law Lien on Count XI;

14.      Declaring the Bond discharged as a matter of law Lien on Count XI;

15.      Awarding Plaintiff the bond premium amount paid to obtain the Bond Lien on Count XI;

16.   Awarding Plaintiff an amount equal to the difference between the amount claimed in the Lien and the amount, if any, that is actually due or to become due thereon on Count XI; and

17.   Such other order or relief that the Court deems fair and just.

## VERIFICATION

I, John K. Scanlan, upon oath depose and say that I am the President of J.K. Scanlan

Company, Inc., and that the factual allegations set forth in the Amended Verified Complaint

are true to the best of my knowledge, except as to those matters alleged on information and

belief, and as to those matters, I believe them to be true.

Signed under the penalties of perjury this **31** day of August, 2011.

John K. Scanlan
President
Duly Authorized

Subscribed and sworn to before me
this **31** day of August, 2011.

Notary Public
My Commission Expires June 25, 2015

Dated: September 1, 2011

**PLAINTIFF,**
**J.K. SCANLAN COMPANY, INC.**

By: _____
    Peter J. Martin (PM2359)
    Hinckley, Allen & Snyder LLP
    Its Attorneys
    20 Church Street
    Hartford, CT  06103
    Tel. (860) 331-2726
    Fax. (860) 331-2727
    pmartin@haslaw.com

## CERTIFICATION OF SERVICE

I hereby certify that on September 1, 2011 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/EFC System.

Peter J. Martin